**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**Attorney for Plaintiff**
*- additional counsel on signature page -*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ZHI XING FAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Zhi Xing Fan ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Tesla, Inc.  ("Tesla" or the "Company"), analysts' reports and advisories about the

1

Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for

discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons

other than Defendants who purchased or otherwise acquired Tesla securities between August 7,

2018 through August 17, 2018, both dates inclusive (the "Class Period"), seeking to recover

damages caused by Defendants' violations of the federal securities laws and to pursue remedies

under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and

Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Tesla designs, develops, manufactures and sells high-performance fully electric

vehicles, and energy generation and storage systems, and also installs and maintains such systems

and sells solar electricity. Tesla purports to be the world's only vertically integrated sustainable

energy company, offering end-to-end clean energy products, including generation, storage and

consumption.

3.     Founded in 2003, the Company was formerly known as "Tesla Motors, Inc." and

changed its name to Tesla, Inc. in February 2017. Tesla is headquartered in Palo Alto, California,

and its common stock trades on the NASDAQ Global Select market ("NASDAQ") under the ticker

symbol "TSLA."

4.     On August 7, 2018, Defendant Elon Musk ("Musk"), Tesla's co-founder,

Chairman, and Chief Executive Officer ("CEO"), issued the following statement via Twitter: "Am

Considering taking Tesla private at $420. Funding secured."

2

5.      In reaction to Musk's tweet, the price of Tesla's common stock increased, reaching an intra-day high of $387.46 per share—$45.47 per share higher than the previous day's closing price—and closed at $379.57 per share on August 7, 2018, an increase of $37.58 per share, or approximately 11%.

6.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants had not secured funding for a transaction to take Tesla private; (ii) Tesla's Board of Directors was unaware of any plan to take Tesla private; (iii) Musk had not retained advisors in connection with his purported plan to take Tesla private; (iv) the status and likelihood of Tesla going private was therefore misrepresented to the market; and (v) as a result, Tesla's public statements were materially false and misleading at all relevant times.

7.      On August 8, 2018, reports began to emerge that the SEC had made inquiries into Musk's tweet and whether it was truthful that he did, in fact, have "funding secured" to take Tesla private.

8.      Following this news, Tesla's stock price fell $9.23 per share, or 2.4%, to close at $370.34 per share on August 8, 2018.

9.      On August 9, 2018, Tesla's stock price continued to fall after facts emerged after the market closed on August 8, 2018 and later on August 9, 2018 that Musk's tweet had, in fact, triggered an SEC inquiry. For example, *The Wall Street Journal* reported that the SEC "has asked Musk to produce proof that he's secured funding. . ." and numerous other media sources reported that Musk did not have funding secured prior to issuing his statement to that effect via Twitter.

10.     Following this news, Tesla's stock price fell by more than $17.89 per share, nearly 5%, to close at $352.45 per share on August 9, 2018, resulting in a two-day decline of more than 7%.

11.     On August 13, 2018, post-market, Musk stated via Twitter: "I'm excited to work with Silver Lake and Goldman Sachs as financial advisers, plus Wachtell, Lipton, Rosen & Katz and Munger, Tolles & Olson as legal advisors, on the proposal to take Tesla private."  However, on August 14, 2018, *Bloomberg* reported that at the time of Musk's August 13, 2018 Twitter announcement, neither Goldman Sachs nor Silver Lake were yet working with Musk pursuant to a signed agreement or in an official capacity.

12.     On this news, Tesla's stock price fell $8.77 per share, or nearly 2.5%, to close at $347.64 per share on August 14, 2018.

13.     Then, on August 16, 2018, *The New York Times* published an interview with Musk in which he described the circumstances leading up to the tweet, including his high stress levels and his use of the sedative-hypnotic sleep medication Ambien in order to cope with his stress.

14.     On this news, the price of Tesla stock declined $29.95 per share, or 8.93%, to close at $305.50 per share on August 17, 2018.

15.     On August 24, 2018, Musk issued a statement on the Company's website stating that he would abandon his plan to take Tesla private.

16.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

17.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

19.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Tesla's principal executive offices are located within this Judicial District.

20.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

21.     Plaintiff, as set forth in the attached Certification, acquired Tesla securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

22.     Defendant Tesla is incorporated in Delaware, with principal executive offices located at 3500 Deer Creek Road, Palo Alto, California 94304. Tesla's common stock trades on the NASDAQ under the symbol "TSLA".

23.     Defendant Musk has served at all relevant times as the Company's Chairman and CEO.

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Tesla, designs, develops, manufactures and sells high-performance fully electric vehicles, and energy generation and storage systems, and also installs and maintains such systems and sells solar electricity. Tesla purports to be the world's only vertically integrated sustainable energy company, offering end-to-end clean energy products, including generation, storage and consumption.

### Materially False and Misleading Statements Issued During the Class Period

25.     The Class Period begins on August 7, 2018, when Defendant Musk issued a statement on Twitter that stated "Am Considering taking Tesla private at $420. Funding secured."

26.     Later that same day, Tesla posted on its corporate blog an e-mail from Musk to the Company's employees, which stated:

> ***Earlier today, I announced that I'm considering taking Tesla private at a price of $420/share***. I wanted to let you know my rationale for this, and why I think this is the best path forward.
>
> First, a final decision has not yet been made, but the reason for doing this is all about creating the environment for Tesla to operate best. As a public company, we are subject to wild swings in our stock price that can be a major distraction for everyone working at Tesla, all of whom are shareholders. Being public also subjects us to the quarterly earnings cycle that puts enormous pressure on Tesla to make decisions that may be right for a given quarter, but not necessarily right for the long-term. Finally, as the most shorted stock in the history of the stock market, being public means that there are large numbers of people who have the incentive to attack the company.
>
> I fundamentally believe that we are at our best when everyone is focused on executing, when we can remain focused on our long-term mission, and when there are not perverse incentives for people to try to harm what we're all trying to achieve.
>
> This is especially true for a company like Tesla that has a long-term, forward-looking mission. SpaceX is a perfect example: it is far more operationally efficient, and that is largely due to the fact that it is privately held. This is not to say that it

6

will make sense for Tesla to be private over the long-term. In the future, once Tesla enters a phase of slower, more predictable growth, it will likely make sense to return to the public markets.

***Here's what I envision being private would mean for all shareholders***, including all of our employees.

First, I would like to structure this so that all shareholders have a choice. Either they can stay investors in a private Tesla or they can be bought out at $420 per share, which is a 20% premium over the stock price following our Q2 earnings call (which had already increased by 16%). My hope is for all shareholders to remain, but if they prefer to be bought out, then this would enable that to happen at a nice premium.

Second, my intention is for all Tesla employees to remain shareholders of the company, just as is the case at SpaceX. If we were to go private, employees would still be able to periodically sell their shares and exercise their options. This would enable you to still share in the growing value of the company that you have all worked so hard to build over time.

Third, the intention is not to merge SpaceX and Tesla. They would continue to have separate ownership and governance structures. However, the structure envisioned for Tesla is similar in many ways to the SpaceX structure: external shareholders and employee shareholders have an opportunity to sell or buy approximately every six months.

Finally, this has nothing to do with accumulating control for myself. I own about 20% of the company now, and I don't envision that being substantially different after any deal is completed.

Basically, I'm trying to accomplish an outcome where Tesla can operate at its best, free from as much distraction and short-term thinking as possible, and where there is as little change for all of our investors, including all of our employees, as possible.

This proposal to go private would ultimately be finalized through a vote of our shareholders. If the process ends the way I expect it will, a private Tesla would ultimately be an enormous opportunity for all of us. Either way, the future is very bright and we'll keep fighting to achieve our mission.

Thanks,

Elon

(Emphases added.)

7

27.     In reaction to Musk's news, the price of Tesla's common stock increased, reaching an intra-day high of $387.46 per share, $45.47 per share higher than the previous day's closing price, and closed at $379.57 per share on August 7, 2018, an increase of $37.58 per share, or approximately 11%.

28.     The statements referenced in ¶¶ 25-26 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants had not secured funding for a transaction to take Tesla private; (ii) Tesla's Board of Directors was unaware of any plan to take Tesla private; (iii) Musk had not retained advisors in connection with his purported plan to take Tesla private; (iv) the status and likelihood of Tesla going private was therefore misrepresented to the market; and (v) as a result, Tesla's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

29.     The truth first began to emerge the day following Musk's statements, on August 8, 2018, when reports began to emerge that the SEC had made inquiries into Musk's tweet and whether it was truthful that he had "funding secured" to take Tesla private.

30.     Following this news, Tesla's stock price fell $9.23 per share, or 2.4%, to close at $370.34 per share on August 8, 2018.

31.     On August 9, 2018, Tesla shares continued to decline after facts emerged after the market closed on August 8, 2018 and later on August 9, 2018 that Musk's tweet had, in fact, triggered an SEC inquiry. For example, The Wall Street Journal reported that the SEC "has asked

Musk to produce proof that he's secured funding. . ." and numerous other media sources reported that Musk did not have "funding secured" before he made a statement to that effect on Twitter.

32.     Following this news, Tesla's stock price fell by more than $17.89 per share, or nearly 5%, to close at $352.45 per share on August 9, 2018, resulting in a two-day decline of more than 7%.

33.     On August 13, 2018, post-market, Musk stated via Twitter: "I'm excited to work with Silver Lake and Goldman Sachs as financial advisers, plus Wachtell, Lipton, Rosen & Katz and Munger, Tolles & Olson as legal advisors, on the proposal to take Tesla private."  However, on August 14, 2018, Bloomberg reported that at the time of Musk's August 13, 2018 Twitter announcement, neither Goldman Sachs nor Silver Lake were yet working with Musk pursuant to a signed agreement or in an official capacity.

34.     On this news, Tesla's stock price fell $8.77 per share, or nearly 2.5%, to close at $347.64 per share on August 14, 2018.

35.     On August 16, 2018, The New York Times published an interview with Musk in which he described the circumstances leading up to the tweet, including his high stress levels and his use of the sedative-hypnotic sleep medication Ambien in order to cope with his stress.

36.     On this news, the price of Tesla stock declined $29.95 per share to close at $305.50 per share on August 17, 2018.

37.     Finally, on August 24, 2018, Musk issued a statement on the Company's website stating that he would abandon his plan to take Tesla private:

<u>Staying Public</u>

Earlier this month, I announced that I was considering taking Tesla private. As part of the process, it was important to understand whether our current investors

believed this would be a good strategic move and whether they would want to participate in a private Tesla.

Our investors are extremely important to me. Almost all have stuck with us from the time we went public in 2010 when we had no cars in production and only a vision of what we wanted to be. They believe strongly in our mission to advance sustainable energy and care deeply about our success.

I worked with Silver Lake, Goldman Sachs and Morgan Stanley, who have world-class expertise in these matters, to consider the many factors that would come into play in taking Tesla private, and to process all the incoming interest that we received from investors to fund a go-private transaction. I also spent considerable time listening to current shareholders, large and small, to understand what they think would be in the best long-term interests of Tesla.

Based on all the discussions that have taken place over the last couple of weeks and a thorough consideration of what is best for the company, a few things are clear to me:

- Given the feedback I've received, it's apparent that most of Tesla's existing shareholders believe we are better off as a public company. Additionally, a number of institutional shareholders have explained that they have internal compliance issues that limit how much they can invest in a private company. There is also no proven path for most retail investors to own shares if we were private. Although the majority of shareholders I spoke to said they would remain with Tesla if we went private, the sentiment, in a nutshell, was "please don't do this."
- I knew the process of going private would be challenging, but it's clear that it would be even more time-consuming and distracting than initially anticipated. This is a problem because we absolutely must stay focused on ramping Model 3 and becoming profitable. We will not achieve our mission of advancing sustainable energy unless we are also financially sustainable.
- That said, my belief that there is more than enough funding to take Tesla private was reinforced during this process.

***After considering all of these factors, I met with Tesla's Board of Directors yesterday and let them know that I believe the better path is for Tesla to remain public. The Board indicated that they agree***.

Moving forward, we will continue to focus on what matters most: building products that people love and that make a difference to the shared future of life on

10

Earth. We've shown that we can make great sustainable energy products, and we now need to show that we can be sustainably profitable. With all the progress we've made on Model 3, we're positioned to do this, and that's what the team and I are going to be putting all of our efforts toward.

Thank you to all of our investors, customers and employees for the support you've given our company. I'm incredibly excited to continue leading Tesla as a public company. It is a privilege.

(Emphases added.)

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Tesla securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Tesla securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Tesla or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Tesla;

- whether Defendant Musk caused Tesla to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Tesla securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

44.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Tesla  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Tesla securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

47.     Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

48.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Tesla securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Tesla securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

50.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Tesla securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Tesla finances and business prospects.

51.     By virtue of their positions at Tesla, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As a director and senior manager of Tesla, Musk had knowledge of the details of Tesla's internal affairs.

53.     Musk is liable both directly and indirectly for the wrongs complained of herein. Because of his position of control and authority, Musk was able to and did, directly or indirectly, control the content of the statements of Tesla.  As an officer and director of a publicly-held company, Musk had a duty to disseminate timely, accurate, and truthful information with respect to Tesla businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Tesla securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Tesla business and financial condition which were

concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Tesla securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

54.    During the Class Period, Tesla securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Tesla securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Tesla securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Tesla securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

55.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against Defendant Musk)**

57.     Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     During the Class Period, Defendant Musk participated in the operation and management of Tesla, and conducted and participated, directly and indirectly, in the conduct of Tesla business affairs.   Because of their senior positions, they knew the adverse non-public information about Tesla misstatement of income and expenses and false financial statements.

59.     As an officer and director of a publicly owned company, Musk had a duty to disseminate accurate and truthful information with respect to Tesla's financial condition and results of operations, and to correct promptly any public statements issued by Tesla which had become materially false or misleading.

60.     Because of his position of control and authority as a senior officer, Defendant Musk was able to, and did, control the contents of the various reports, press releases and public filings which Tesla disseminated in the marketplace during the Class Period concerning Tesla's results of operations.   Throughout the Class Period, Musk exercised his power and authority to cause Tesla to engage in the wrongful acts complained of herein. Defendant Musk, therefore, was a "controlling person" of Tesla within the meaning of Section 20(a) of the Exchange Act.   In this capacity, he participated in the unlawful conduct alleged which artificially inflated the market price of Tesla securities.

61.     Defendant Musk, therefore, acted as a controlling person of Tesla.   By reason of his senior management positions and being a director of Tesla, Musk had the power to direct the actions of, and exercised the same to cause, Tesla to engage in the unlawful acts and conduct

complained of herein.  Musk exercised control over the general operations of Tesla and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

62.     By reason of the above conduct, Defendant Musk is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tesla.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  September 6, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, Fan, Zhixing, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Tesla Motors Inc (NASDAQ:TSLA, hereafter referred as the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire the "Company" securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired the "Company" securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in the "Company" securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

1

8.  I declare under penalty of perjury that the foregoing is true and correct.


Executed  09-01-2018

(Date)


Fan, Zhixing

(Signature)


Fan, Zhi xing

(Type or Print Name)


2

**Tesla, Inc. (2018) (TSLA)**                                                              **Fan, Zhi Xing**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| **Common Stock** | | | |
| 8/7/2018 | Purchase | 200 | $352.4000 |
| 8/9/2018 | Purchase | 200 | $352.9700 |
| 8/9/2018 | Purchase | 200 | $350.8900 |
| 8/10/2018 | Purchase | 100 | $353.3300 |
| 8/10/2018 | Purchase | 300 | $355.3700 |
| 8/10/2018 | Purchase | 100 | $354.6500 |
| 8/7/2018 | Sale | 200 | $351.1400 |
| 8/9/2018 | Sale | 200 | $353.2500 |
| 8/9/2018 | Sale | 200 | $352.7700 |
| 8/10/2018 | Sale | 100 | $356.7800 |
| 8/10/2018 | Sale | 300 | $355.7400 |
| 8/10/2018 | Sale | 100 | $355.0700 |
| **TSLA Aug 10 2018 $335.0 Call** | | | |
| 8/7/2018 | Purchase | 2 | $32.7500 |
| 8/7/2018 | Purchase | 13 | $31.3000 |
| 8/7/2018 | Sale | 10 | $10.1500 |
| 8/7/2018 | Sale | 3 | $12.0000 |
| 8/7/2018 | Sale | 1 | $19.4500 |
| 8/7/2018 | Sale | 1 | $24.4000 |